```
        IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                    *
MARILYN MAYO-PARKS, et al.,
                                    *
     Plaintiffs,
v.                                  *    CIVIL NO.: WDQ-03-3497

UNITED STATES OF AMERICA,           *

     Defendant.                     *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

Marilyn Mayo-Parks, as surviving spouse and Personal Representative of the Estate of Phillip Mayo, has sued the United States for medical malpractice and wrongful death.[1] Pending is the Plaintiffs' motion for partial summary judgment. For the reasons discussed below, the motion will be granted.

BACKGROUND

On December 12, 2001, 75 year old Phillip Mayo, having been diagnosed with invasive colon cancer, underwent a right hemicolectomy[2] at the Veterans Administration Hospital in Baltimore, Maryland. Compl. ¶ 20. The hemicolectomy surgery was performed successfully and without complication, and Mayo

---

[1] Mr. Mayo's children are also Plaintiffs.

[2] A hemicolectomy is the surgical removal of part of the colon. MIRRIAM-WEBSTER MEDICAL DICTIONARY (2003).

1

was scheduled to be discharged from the hospital on December 18, 2001.  *Id.*

On December 18, 2001, Mayo's discharge was postponed because a blood test revealed a sudden drop in his platelet count.  Pl.'s Ex. 1 (Mayo's Medical Record).  Mayo was examined by a hematologist, who concluded that the drop in his platelet count was probably caused by the medications that he had been taking.  *Id.*  The hematologist recommended that the medications be discontinued and Mayo remain in the hospital for observations.  *Id.*

On December 19, 2001, having discovered elevated bili, ldh, and schistocytes on Mayo's morning lab test results, the hematologist began to suspect that Mayo was suffering from thrombotic thrombocytopenia purpura (TTP).[3]  *Id.*  The hematologist recommended that Mayo receive plasmapheresis[4] as

---

[3] TTP is characterized by arteriolar lesions in various organs that contain platelet thrombi. HARRISON'S PRINCIPLES OF INTERNAL MEDICINE 689 (15th ed. 2001).  Clinical manifestations of TTP include hemolytic anemia with fragmentation of erythrocytes and signs of intravascular hemolysis, thrombocytopenia, diffuse and nonfocal neurologic findings, decreased renal function, and fever.  *Id.*

[4] Plasmapheresis is a process for obtaining blood without depleting the donor or patient of other blood constituents by separating out the plasma from the whole blood and returning the rest to the donor's or patient's circulatory system. MIRRIAM–WEBSTER MEDICAL DICTIONARY (2003).  Plasmapheresis permits greater than 90% of TTP patients to survive if therapy is

soon as possible. *Id.*

On December 20, 2001, the hematologist learned that Mayo had not yet received plasmapheresis, but his platelet count had elevated without intervention. *Id.* The hematologist recommended that plasmapheresis be postponed and Mayo be held for further observations. *Id.*

On the morning of December 23, 2001, Mayo was generally confused, his mental awareness waxed and waned, and he was unable to grasp with his left hand. *Id.* Mayo was sent for a CT scan and started vomiting when he returned to his room. *Id.* Mayo lost consciousness that afternoon and was minimally arousable for the rest of the day. *Id.*

At about 1:30 a.m. on December 24, 2001, Mayo developed severe respiratory distress and went into respiratory and cardiac arrest. *Id.* Mayo died at approximately 2:00 a.m. *Id.*

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty*

---

promptly instituted. HARRISON'S PRINCIPLES OF INTERNAL MEDICINE 690 (15th ed. 2001).

*Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

## ANALYSIS

The Plaintiffs seek partial summary judgment with respect to the affirmative defenses of contributory negligence and

4

assumption of the risk, and that: (1) the United States violated the applicable standards of care; (2) by violating the standards of care, the United States caused the deterioration of Phillip Mayo's physical and mental condition between December 17 and 24, 2001; and (2) the violations of the standards of care by the United States caused Phillip Mayo's death.  The United States does not dispute its liability for Phillip Mayo's death, but denies that it caused his physical and mental deterioration between December 17 and 24, 2001.

The Plaintiffs argue that because the United States failed to proffer a qualified expert witness certificate, a requirement for defendants denying liability under Maryland's Health Care Malpractice Claims Act[5] ("HCMCA"), it cannot contest its liability in federal court.

The HCMCA requires claimants to exhaust an arbitration remedy provided by the state as a precondition to bringing a civil action on the claim in state or federal court. § 3-2A-04; *Rowland v. Patterson*, 882 F.2d 97 (4th Cir. 1989). Section 3-2A-04 provides that:

> A claim . . . may be adjudicated in favor of the claimant on the issue of liability, if the defendant disputes

---

[5]MD. CODE ANN., CTS. & JUD. PROC. §§ 3-2A-01 *et seq*. (2002 & Supp. 2004).

> liability and fails to file a certificate of a qualified expert attesting to the compliance with standards of care, or that the departure from the standards of care is not the proximate cause of the alleged injury, within 120 days from the date the claimant served the certificate of a qualified expert.

When a defendant fails to produce a countervailing medical expert certificate, the defendant loses the right to contest liability.  *Witte v. Azarian*, 369 Md. 518, 533 (2002).

The United States argues that the HCMCA is procedural state law, inapplicable in federal court under the *Erie* doctrine.  The HCMCA, however, "has substantive aspects which, under *Erie*, must be honored by federal courts."  *Rowland*, 882 F.2d at 99; *see also Oslund v. United States*, 701 F. Supp. 710, 714 (D. Minn. 1988) (federal court's enforcement of state medical malpractice statute requiring submission of expert affidavits does not violate the *Erie* doctrine).  By failing to file the countervailing expert witness certificate required under the HCMCA, the United States forfeited its ability to deny liability for the Plaintiffs' claims.  Accordingly, the Plaintiffs' motion for partial summary judgment will be granted.

| | |
|---|---|
| February 25, 2005<br>Date | /s/<br>William D. Quarles, Jr.<br>United States District Judge |